United States District Court
Southern District of Texas
**ENTERED**
February 25, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JONATHAN DAVID DREW, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-13-0059 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| *Respondent*. | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner, a state inmate represented by counsel, filed this section 2254 habeas petition challenging his conviction and life sentence for felony murder. Respondent filed a motion to dismiss (Docket Entry No. 9), to which petitioner filed a response (Docket Entry No. 10).

Based on careful consideration of the pleadings, the record, the motion and response, and the applicable law, the Court GRANTS the motion to dismiss and dismisses this lawsuit for the reasons shown below.

*Background and Claims*

Petitioner was charged with capital murder. The jury found him guilty of the lesser included offense of felony murder and sentenced him to life incarceration. The conviction was affirmed on appeal, and the Texas Court of Criminal Appeals refused discretionary review. *Drew v. State*, 76 S.W.3d 436 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

Petitioner's application for state habeas relief, filed with the trial court in 2003, was denied by the Texas Court of Criminal Appeals in January 2013.

Petitioner claims in the instant petition that trial counsel was ineffective in advising him not to testify at the guilt-innocence stage of trial. Respondent argues that the claim is without merit.

*Factual Background*

In its opinion affirming petitioner's conviction on direct appeal, the intermediate state court of appeals set forth the following statement of facts:

> On November 29, 1998, complainant Tina Flood and her friend Justin Chapman attended a birthday party at a bar in Seabrook, Texas. Appellant was introduced to Tina at the party. He bought her drinks, and they were seen kissing. When the bar closed and the party ended at 2:00 a.m., several people went to a Holiday Inn hotel. Because Tina was too intoxicated to drive to the hotel, she and Chapman rode there with other people. Her car was left in [a] parking lot next to the bar. When they attempted to check into their room, Chapman, who was a Holiday Inn employee, realized he had left his employee discount card in Tina's car. They saw appellant sitting in his pickup truck in the hotel parking lot and accepted his offer to take them back to the bar. Tina sat in the middle next to appellant, and Chapman sat in the passenger's side of the front seat.
>
> When they arrived at the parking lot next to the bar, Chapman exited appellant's truck and held Tina's purse while she exited the truck. According to Chapman's testimony, Tina was attempting to scoot across the seat to the passenger-side door when appellant drove away. Chapman was between the open door and the body of the truck and held onto the door as appellant drove away. Chapman testified that Tina screamed for appellant to stop. As the truck pulled out of the parking lot, the door slammed shut and knocked Chapman into a ditch. Chapman ran to the bar and began beating on the front door.

2

>At 2:52 a.m., Seabrook Police Officer Marc Hatton was on patrol when he saw Chapman beating on the bar's door. Chapman told Officer Hatton that his friend had just been kidnapped. Chapman described a maroon, full-sized, single-cab Chevrolet truck. The description of appellant's truck was broadcast to other officers in the area. At 3:49 a.m., Harris County Deputy Constable Sean Kitchens spotted appellant's truck, and he was stopped for failing to maintain a single lane of traffic. Deputy Kitchens asked appellant for his license. When appellant leaned over to retrieve his license from the console, Kitchens noticed a bloody foot lying on the seat. When asked who that was, appellant responded, "That's my friend Tina. She's knocked out over there." Tina was lying in a fetal position against the passenger's door, naked except for her skirt, which was bunched around her waist. She had abrasions on her leg, buttocks, and arm. Deputy Kitchens called for backup assistance. After the backup arrived, appellant was asked to step out of the truck. Deputy Kitchens noticed a scratch on appellant's right arm, three scratches on the back and side of his neck, and what looked like blood on his shirt collar.
>
>Tina was taken to the Clear Lake Regional Medical Center. Emergency Room Nurse Christine McFall conducted a sexual assault examination. According to McFall, Tina repeatedly stated, "Please help me. Please help me. Don't hurt me." Emergency Room Nurse Mary Jane Heady heard Tina state, "Please don't rape me." A CAT scan showed that Tina had sustained a skull fracture, which caused her brain to swell and hemorrhage. Surgery was performed, but Tina died a day and a half later because [of] swelling in her brain. The State tried appellant for capital murder, however, the jury found him guilty of felony murder, and he was sentenced to life in prison.

*Drew*, 76 S.W.3d at 443–44.

*Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court

3

unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with

> this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

*Analysis*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id*. at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id*. at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id*.

Petitioner complains in this proceeding that he elected not to testify during guilt-innocence based on inaccurate legal advice from trial counsel. He states that he wanted to tell the jury that he did not kidnap complainant, sexually assault her, or intentionally cause

7

her death, but "[Counsel] told him that, if he testified, he could be questioned about several alleged extraneous offenses, which would then become admissible in rebuttal." In reliance on counsel's advice, he did not testify. (Docket Entry No. 1, p. 20.) Petitioner states he later discovered that Texas law requires extraneous offenses to be similar to the charged offense, and not too remote in time, in order to be admissible. He claims that, had counsel fully informed him of these admissibility requirements, he would have elected to testify because he himself did not believe the extraneous offenses were admissible.[1] He further states that, even had the trial court allowed the offenses into evidence and he were found guilty, he would have appealed the conviction and "probably" won a reversal. (Docket Entry No. 1, p. 36.)

In responding to petitioner's claim on collateral review, trial counsel submitted an initial affidavit to the state trial court, in which he testified as follows:

---

[1]The extraneous offenses included allegations that (1) approximately one month prior to the instant offense, petitioner attempted to kidnap a woman as she exited her truck in the Calder Square Apartments parking lot; (2) approximately one month prior to the instant offense, petitioner sexually assaulted an exotic dancer he hired for nude dancing at his apartment; (3) approximately three months prior to the instant offense, petitioner sexually assaulted another exotic dancer he hired for nude dancing at his apartment; (4) approximately seven months prior to the instant offense, petitioner assaulted a female customer who complained that her car engine blew up a few minutes after he told her it had been repaired; (5) approximately one year prior to the instant offense, petitioner and another male kidnaped a woman at knife point at a traffic light on Calder Road, drove her to a rural location, and took turns sexually assaulting her for several hours. In two other incidents alleged to have occurred eight to ten years earlier, petitioner sexually assaulted and/or attempted to sexually assault a teen-aged girl neighbor and a teen-aged girl at a party.

> There was extensive negative publicity about the instant offense and publicity attempting to link [petitioner] to other offenses even though there was no evidence to support the public accusations. For example a jar of teeth taken from his parents' home was displayed on TV [as] trophy teeth taken from his numerous victims until it was determined that the teeth were actually [petitioner's] baby teeth that had been saved by his mother. He was also accused of several offenses by different women in Austin and the Clear Lake area. One accusation was made by a woman who worked as an escort in Austin[,] Texas. Several others were made by women [who] had not reported the accusations for several years. Two were criminal investigations that had been dormant and the alleged victims identified [petitioner] as their assailants years after the events. In each case, there was little to no corroboration to support the accusations. *Because of all of the extraneous accusations, it was decided that it would be dangerous for [petitioner] to testify in his own defense*. His story would have to be brought out without him taking the stand and risk[ing] the prejudicial extraneous matters.

*Ex parte Drew*, pp. 728–29 (emphasis added).

> In a subsequent follow-up affidavit, trial counsel testified that,

> The State gave pretrial notice that it intended to offer testimony that [petitioner] sexually assaulted or attempted to sexually assault several women. The State continued to add to their alleged extraneous offenses during the trial as well. I told him that, if he testified, *he could be questioned* about the extraneous offenses, *which would then become admissible in rebuttal*. Based on numerous meetings and discussions we had with [petitioner], [co-counsel] and I did not believe that [petitioner] would be a good witness in his own defense. Additionally, at the close of the State's case, and after we put on our expert, Dr. Norton, we did not believe the State had proven its case sufficiently to remove a reasonable doubt. Based on these factors, I advised [petitioner] not to testify. I do not recall there being a disagreement about it, [petitioner] followed my advice and did not testify.

*Id.*, p. 1390 (emphasis added).

In rejecting petitioner's claim of ineffective assistance, the state trial court on collateral review found as follows:

> The court concludes that trial counsel was not ineffective in advising applicant not to testify at the guilt-innocence stage because counsel reasonably believed that, if applicant testified, prejudicial extraneous offenses would become admissible. The court recommends that habeas corpus relief be denied.

*Id*., p. 1484. The Texas Court of Criminal Appeals relied on this finding of fact and/or conclusion of law in denying habeas relief. *Id*., at cover.

The *Strickland* burden of proof is an exceptionally onerous one on federal habeas review. As explained by the Supreme Court,

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.
>
> Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, 562 U.S. at 105 (emphasis added) (internal quotations and citations omitted).

Similarly, the Fifth Circuit Court of Appeals has described the manner in which a federal court is to review a state court's *Strickland* determination in section 2254 proceedings:

> It bears repeating that the test for federal habeas purposes is not whether [petitioner] made that showing. Instead, the test is whether the state court's decision—that [petitioner] did not make the *Strickland*-showing—was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his IAC claim. Of course, in reaching our decision, we must consider the underlying *Strickland* standards.

*Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003). In short, the issue here for this Court – and the burden petitioner must surmount – is not whether counsel's advice was reasonable *per se*, but whether the state court's determination that it was reasonable was, itself, reasonable. The two issues are not interchangeable; if they were, the deferential review standard imposed by section 2254(d) would be meaningless.

Despite the unwavering clarity by which the Supreme Court holds that constitutionally effective counsel is reasonably effective counsel, petitioner argues that counsel was ineffective because his advice was wrong. Specifically, he claims that "resolution of this case ultimately depends on whether trial counsel [] *accurately* advised petitioner not to testify because several extraneous offenses would become admissible in rebuttal." (Docket Entry No. 10, p. 1, emphasis added.) Petitioner misses the mark. Resolution of petitioner's ineffective assistance claim under *Strickland* did not, and does not, hinge on an absolute

determination of whether the evidence would have been admissible under state law had petitioner testified. Indeed, the trial court on collateral review acted properly in refusing to determine the issue, as it was both hypothetical and unnecessary under the applicable standards.[2]

Rather, the question on state collateral review was not whether the evidence would have been admissible had petitioner testified, but whether counsel reasonably believed that, if applicant testified, prejudicial extraneous offenses would become admissible. For purposes of *Strickland*, counsel's belief need not have been necessarily correct, but it must have been reasonable. Consequently, the controlling issue was one of reasonableness, not accuracy.

That reasonableness trumps absolute accuracy is premised in the standards set forth by the Supreme Court in *Strickland*. *Strickland* does not guarantee perfect representation, only "reasonably competent" representation. 466 U.S. at 687. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*., at 689. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*

---

[2]Petitioner and the State each had submitted proposed findings of fact and conclusions of law on state collateral review calling for specific findings as to whether the extraneous offenses would have been admissible had petitioner testified during guilt-innocence. *Ex parte Drew*, at 1412–1421 (petitioner's proposal); 1477–78 (State's proposal). The trial court ultimately rejected the proposals and entered its own findings that made no determination regarding admissibility of the extraneous offenses. *Id.* at 1484.

In the instant case, it would be well within the bounds of a reasonable judicial determination for the state court to conclude that trial counsel could follow a strategy that did not require unnecessarily exposing petitioner to the risk of otherwise inadmissible extraneous offense evidence being used during guilt-innocence.[3]

That respondent and petitioner have each been able to present cogent, well-supported, and credible arguments post-trial as to the admissibility *and* inadmissibility of the extraneous offense evidence only serves to highlight the risk counsel faced in advising petitioner whether or not to testify. It is all too clear from the record and briefings that a risk of admissibility existed and that trial counsel advised petitioner not to take the risk.[4] Petitioner does not rebut the strong presumption that trial counsel, in his professional judgment and as a matter of reasonable trial strategy, evaluated the extraneous offense evidence, considered the applicable law, and formed an opinion that the trial court might or would allow one or more of the extraneous offenses into evidence if petitioner testified. The state court found counsel's

---

[3]There is no dispute that the extraneous offense evidence was inadmissible if petitioner did not testify.

[4]*See, e.g.*, *United States v. Guerrero,* 157 F. App'x 995, 996 (9th Cir. 2005) ("Guerrero argues that counsel's advice not to testify was deficient because it was based on a flawed understanding of the rule of collateral estoppel. Counsel advised Guerrero not to testify, in part, to avoid opening the door to impeachment with prejudicial evidence that had been previously suppressed. Guerrero argues that this advice was flawed because evidence barred under collateral estoppel would not have come in even had he testified. This analysis is incorrect. Evidence of prior acquitted conduct is admissible in a subsequent action *under certain circumstances*. Thus, trial counsel's advice not to testify was not deficient in this respect.") (citations omitted, emphasis added).

actions reasonable under *Strickland*, and this Court finds that the state court's determination was, itself, reasonable under section 2254(d).

It must also be emphasized that the evidentiary issue was not trial counsel's sole reason for advising petitioner not to testify during guilt-innocence. To the contrary, trial counsel testified in his affidavit that,

> Based on numerous meetings and discussions we had with [petitioner], [co-counsel] and I did not believe that [petitioner] would be a good witness in his own defense. Additionally, at the close of the State's case, and after we put on our expert, Dr. Norton, we did not believe the State had proven its case sufficiently to remove a reasonable doubt. Based on these factors, I advised [petitioner] not to testify.

*Ex parte Drew*, p. 1390. Whether trial counsel expressed these additional thoughts to petitioner or not, they played a role in counsel's strategy to recommend petitioner not testify.

Regardless, petitioner fails to meet his burden under *Strickland* to show actual prejudice. With respect to prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*., at 693. Petitioner here does not establish that, but for counsel's allegedly deficient advice, there is a reasonable probability that the result of the trial would have been different.

Despite petitioner's opinion that he would have swayed the jury in his favor had he testified, it is pure speculation at this juncture whether the jury would have believed his testimony and found him not guilty had he testified, with or without admission of extraneous offense evidence. Petitioner recognizes and admits this in proffering his additional opinion that, "Had the trial court admitted one or more of the alleged extraneous offenses in rebuttal, an appellate court probably would have reversed any conviction." Petitioner's conclusory opinions do not establish that, but for counsel's alleged deficiency, there is a reasonable probability that he would have testified during guilt-innocence and that the result of the trial would have been different. Petitioner's bald assertion that admission of the extraneous offense evidence during guilt-innocence would have been reversed on appeal supports neither his claim of "inaccurate advice" nor his claim of actual prejudice.

Although petitioner relies heavily on the Supreme Court case of *Rock v. Arkansas*, 483 U.S. 44 (1987), the decision is not on point. *Id*., at 44 ("The issue presented in this case is whether Arkansas' evidentiary rule prohibiting the admission of hypnotically refreshed testimony violated petitioner's constitutional right to testify on her own behalf as a defendant in a criminal case."). No person or rule of law directly prevented petitioner from testifying in the instant case, as it was a decision he made in conjunction with trial counsel's professional advice and trial strategy. Thus, petitioner's claim, and its determination, are governed by *Strickland*, not *Rock*. *See United States v. Wines*, 691 F.3d 599, 606 (5th Cir. 2012), holding as follows:

> Thus, the only issue before the panel at this time is whether Wines's trial counsel rendered ineffective assistance by advising him not to testify on his own behalf.
>
> In determining whether counsel's performance was ineffective, we apply the familiar test of *Strickland.* To establish that counsel was ineffective, the defendant must prove: (1) that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment *Strickland*, and (2) that the deficient performance prejudiced the defense. To prove that trial counsel's deficient performance prejudiced the defense, the defendant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of a criminal trial. This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result.
>
> \* \* \* \*
>
> As we earlier noted, proving prejudice under *Strickland* is a heavy burden. Indeed, as far as we can determine, no defendant in any court in the United States has been able to prove *Strickland* prejudice on the basis of his counsel advising him not to testify in his own defense at trial. Wines fails to establish an exception to this record. We therefore conclude that, even if Wines's counsel was deficient in advising Wines not to testify at trial, his counsel's error could not be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

691 F.3d at 604, 606 (citations, quotation marks omitted).

The state court denied relief on petitioner's ineffective assistance claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment dismissal of petitioner's claim.

16

*Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 9) is GRANTED and this lawsuit is DISMISSED WITH PREJUDICE. A certificate of appealability is DENIED. Any and all pending motions are DENIED AS MOOT.

Signed at Houston, Texas on February 25, 2016.

_____
Gray H. Miller
United States District Judge